IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SHAWN ROYAL and REGINA ROYAL PLAINTIFFS

v. Case No. 4:15-cv-04008

MISSOURI & NORTHERN ARKANSAS RAILROAD COMPANY, INC.; RAILAMERICA, INC.; and GENESEE & WYOMING, INC. DEFENDANTS

**MEMORANDUM OPINION**

Before the Court are six motions for summary judgment filed by Defendants Missouri & Northern Arkansas Railroad Company, Inc. ("MNA"); RailAmerica, Inc. ("RA"); and Genessee & Wyoming, Inc. ("GWI"). (ECF Nos. 23, 29, 35, & 38). Plaintiffs Shawn Royal and Regina Royal[1] have filed responses to each of Defendants' motions. (ECF Nos. 55, 59, 62, & 65). Defendants have filed replies. (ECF Nos. 73, 75, 77, & 82). The Court finds these matters ripe for its consideration.

In their motions for summary judgment, Defendants assert that (1) Separate Defendants RA and GWI are entitled to summary judgement because Plaintiffs cannot establish that they are subject to personal jurisdiction in Arkansas and the record fails to support Plaintiffs' negligence claims against them (ECF No. 23); (2) Plaintiffs' FELA claims fail because Royal is not an employee of a railroad (ECF No. 29); (3) Defendants owed no duty of care to Royal (ECF No. 35); and (4) Defendants are entitled to summary judgment on certain FELA claims, negligence claims, and damages claims (ECF No. 38).

For the reasons discussed herein, the Court finds that Summary Judgment should be granted in favor of Defendants on all of Plaintiffs' claims. Because the Court finds that summary judgment

[1]In this Opinion, "Royal" refers to Plaintiff Shawn Royal unless otherwise indicated.

should be granted, it is unnecessary for the Court to consider Defendants additional motions for summary judgment regarding preemption (ECF No. 26) and causation (ECF No. 32).

## I. BACKGROUND

This case involves a number of different entities, and the relationships of those entities to one another are of importance in analyzing Defendants' summary judgment arguments. The Plaintiffs are Shawn Royal and his wife, Regina Royal. Shawn Royal is an employee of North American Railway Services ("NARS") which performs work on railroads. NARS entered into a contractual agreement with RailAmerica ("RA") to do work on one of RA's railroad's, Missouri and Northern Arkansas ("MNA"). In 2012, Genesee & Wyominc, Inc. ("GWI") acquired RA through a stock-purchase agreement.

Plaintiffs allege that, on or about September 25, 2012, Plaintiff Shawn Royal was operating a ballast regulator along MNA's tracks when the machine suddenly stopped and he was thrown into the windshield and then off of the machine. The purpose of a ballast regulator on a railroad is to pick up ballast[2] and move it onto the rails. Plaintiff asserts that the accident occurred because his machine pulled a large piece of rock, called rip rap, onto the rails and then ran into the rip rap. In their Complaint, Plaintiffs allege that Royal was injured as a result of improper track surfacing, improper ballast, rip rap, obstruction of safe passage of track machinery, and conditions that violate the Federal Railroad Safety Act regulations relating to track safety standards. Plaintiffs seeks relief pursuant to the Federal Employers' Liability Act ("FELA") and state law negligence for damages incurred from the accident.

---

[2] "Track ballast is the stone or other material placed underneath and around railroad tracks to provide the structural support, drainage, and erosion protection necessary for safe rail travel." *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 428 (6th Cir. 2009).

## II. STANDARD

A motion for summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To establish that a genuine issue of material fact exists, the nonmoving party must show that (1) there is a factual dispute, (2) the disputed fact is material to the outcome of the case, and (3) the dispute is genuine. *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 339, 401 (8th Cir. 1995). A dispute is genuine only if a reasonable jury could return a verdict for either party. *Id.*; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 510 (8th Cir. 1995).

## III. RAILAMERICA AND GENESEE & WYOMING, INC.

### A. JURISDICTION

Separate Defendants RA and GWI assert that they are entitled to summary judgment because Plaintiffs cannot establish that RA and GWI are subject to personal jurisdiction in the state of Arkansas. Alternatively, they assert that the record fails to support Plaintiffs' negligence claims against them. Plaintiffs respond that Defendants have ignored corporate formalities and acted as alter egos of one another, and, thus, the exercise of personal jurisdiction over RA and GWI does not offend due process.

The Eighth Circuit has not decided whether the defense of lack of personal jurisdiction may be raised in a summary judgment motion or whether, by its nature, it must be raised in a motion to dismiss. *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1012 (D. Minn. 2008). Other courts have found that a motion raising the defense of lack of personal jurisdiction is necessarily a motion to

dismiss under Rule 12(b)(2), and not a motion for summary judgment under Rule 56. *See, e.g.*, *Robinson v. W. NIS Enter. Fund*, No. C97-41, 1999 WL 33656834 (N.D. Iowa Mar. 31, 1999). Treating the motion as a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is necessary because "[i]f the court has no jurisdiction, it has no power to enter a judgment on the merits and [instead] must dismiss the action." 10A Wright, Miller & Kane, Civil 3d § 2713, at 239. Accordingly, the Court will treat this summary judgment motion as a motion to dismiss under Rule 12(b)(2).

However, where the district court considers evidence outside the pleadings in ruling on a Rule 12(b)(2) motion, the standards of Rule 56 apply. *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309-10 (8th Cir. 1992), *cert. denied*, 508 U.S. 908 (1993). Consequently, a motion to dismiss for lack of personal jurisdiction which involves evidence outside the pleadings may be granted only if the record, viewed in the light most favorable to the non-moving party, does not raise any genuine issue of fact material to the question of personal jurisdiction over the moving party. *Id.*

RA and GWI argue that dismissal is appropriate because they do not have sufficient minimum contacts with the state of Arkansas to fairly subject them to personal jurisdiction, and there is no basis in the record for piercing MNA's corporate veil under the alter-ego approach to establish personal jurisdiction. Plaintiffs assert that RA wholly owns MNA, a railroad operating in Arkansas of which RA is in active and direct control. Plaintiffs assert that the Master Service Agreement between Royal's employer, NARS, and RA demonstrates that RA maintained direct control over the performance of NARS and its employees on MNA's tracks and thus RA is subject to personal jurisdiction in Arkansas. Plaintiffs assert that the relationship between RA and GWI raises a fact

issue with respect to the propriety of the Court's exercise of personal jurisdiction over GWI.

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). A federal court sitting in diversity can exercise personal jurisdiction over a defendant only if doing so comports with both the long-arm statute of the state in which the federal court is located and the Due Process Clause of the Fourteenth Amendment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 463 (1985); *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). "Arkansas's long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by constitutional due process." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing Ark. Code. Ann. § 16-4-101).

Exercising jurisdiction over a defendant is constitutionally permissible if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). The Eighth Circuit has established a five-factor test to determine the sufficiency of a nonresident defendant's contacts with the forum state. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). The five factors are: 1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties. *Id.* at 1073-74 (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). The Court should give significant weight to the first three factors. *Id.* at 1074. A nonresident corporation's "affiliations with the State [must be] so continuous and systematic as to render [it] essentially at home in the

forum state." *Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014) (internal quotations omitted). The Supreme Court has said that it is only in an exceptional case when a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial as to render the corporation at home in that state. *Daimler AG*, 134 S.Ct. at 761 n.19.

For a defendant nonresident parent corporation, personal jurisdiction may also be based on the activities of the nonresident corporation's in-state subsidiary, but only if the parent "so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate Defendant's alter ego." *Epps v. Stewart Information Servs. Corp.*, 327 F.3d 642, 648-49 (8th Cir. 2003). Mere ownership of a resident company is insufficient to subject the parent to jurisdiction. *Id.* at 650. Thus, Plaintiffs must be able to pierce the corporate veil under Arkansas law to establish jurisdiction in this way. *Id.* at 649.

In Arkansas, the doctrine of piercing the corporate veil is applied when the facts warrant its application to prevent injustice. *Humphries v. Bray*, 611 S.W.2d 791, 793 (Ark. App. 1981) (citing *Aetna Casualty and Surety Company v. Stover*, 327 F.2d 288 (8th Cir. 1964)). Piercing the fiction of a corporate entity should be applied with great caution. *Banks v. Jones*, 390 S.W.2d 108, 111 (Ark. 1965). It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entities should be disregarded. *Rounds & Porter Lumber Co. v. Burns*, 225 S.W.2d 1, 3 (Ark. 1949).

RA is a Delaware corporation with its principal place of business in Jacksonville, Florida. RA is not authorized by the Secretary of State to do business in Arkansas. RA did not own any property in Arkansas and did not have employees in Arkansas. RA and MNA were controlled and

operated by separate and distinct boards of directors and employed separate personnel.

GWI acquired RA in 2012. GWI is a Delaware corporation with its principal place of business in Darien, Connecticut. GWI also is not authorized by the Secretary of State to do business in Arkansas, does not own any property in Arkansas, and does not have any employees in Arkansas. Since GWI's acquisition of RA, GWI and MNA have maintained separate and distinct boards of directors and have employed separate personnel.

The Master Service Agreement ("the Agreement") in this case is a contractual agreement between RA and NARS. RA acted as the agent of MNA to contract with NARS to provide services to MNA. (ECF No. 29-1). Pursuant to the Agreement, MNA would serve as Project Engineer for the work that NARS performed, make inspections, verify materials and workmanship, compensate NARS, and retain power to terminate the Agreement with NARS. In the Agreement, RA maintained the right to inspect and test the work and terminate the Agreement, and RA's Standard Engineering specifications and standards applied. NARS invoices for services were subject to approval by RA and were to be sent to RA.

The Court will examine the facts from two perspectives. First, the Court will consider whether RA and GWI had sufficient minimum contacts to subject themselves to personal jurisdiction in Arkansas. Second, the Court will determine whether it can properly pierce MNA's corporate veil under the alter-ego approach to establish personal jurisdiction over RA and GWI.

First, the Court finds that Plaintiffs have failed to establish that either RA or GWI have sufficient minimum contacts with Arkansas. The evidence in this case indicate that RA and GWI are neither present nor doing business in Arkansas. The Agreement, on its face, demonstrates only that RA had general oversight. It fails to demonstrate that either RA or GWI had sufficient quality

or quantity of contacts to subject them to jurisdiction in Arkansas. Plaintiffs point to no specific contacts nor any other evidence in the record to convince the Court that this is the type of "exceptional case" which demonstrates contacts with Arkansas that are so systematic and continuous that render the corporations sufficiently "at home" in Arkansas.

The Court also finds that Plaintiffs have failed to demonstrate that the Court can pierce the corporate veil of MNA to establish personal jurisdiction over either RA or GWI. With respect to RA, Plaintiffs point only to the Agreement. However, the language of the Agreement fails to demonstrate that RA "so controlled" MNA to the extent that the corporate existence of MNA was disregarded. The two entities maintain separate boards and have separate employees. There is no indication that there was actual control or manipulation of MNA by RA. The relationship of a parent company wholly owning a subsidiary company is insufficient to establish that the corporate existence was disregarded. *See Epps*, 327 F.3d at 649. With respect to GWI, Plaintiffs assert only that the relationship between RA and GWI raises an issue of fact regarding whether GWI respected the corporate form. Because the Court finds that RA is not subject to personal jurisdiction in Arkansas, this argument is unpersuasive and unsupported by evidence.

Accordingly, the Court finds that it is without jurisdiction to consider Plaintiffs' claims against RA and GWI. Separate Defendants' Motion for Summary Judgment (ECF No. 23) should be granted, and RA and GWI should be dismissed.

B. NEGLIGENCE

Alternatively, RA and GWI assert, even if this Court has personal jurisdiction over RA and GWI, that Plaintiffs have failed to put forth any evidence to support a negligence claim against RA and GWI. They assert there is no evidence from which the Court could find RA or GWI liable for

the alleged negligence of MNA, nor is there evidence of independent acts of negligence by RA or GWI. Plaintiffs do not respond to RA and GWI's argument.

The Arkansas Supreme Court has defined negligence as "the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence." *Scully v. Middleton*, 751 S.W.2d 5, 5 (Ark. 1988). All corporations, regardless of the fact that the holders of stock and the officers of the corporation are identical, are separate and distinct legal entities; and it follows that, in the absence of facts on which liability can be predicated, one such corporation is not liable for the debts of another. *See Mannon v. R.A. Young & Sons Coal Co.*, 179 S.W.2d 457 (Ark. 1944). Plaintiffs have failed to present any evidence of negligence as it relates to RA and GWI. Accordingly, RA and GWI's Motion for Summary Judgment (ECF No. 23) should be granted on this alternative ground.[3] Because the Court is without jurisdiction to consider claims against RA and GWI, Defendants' remaining arguments will only be analyzed with respect to Plaintiffs' claims against MNA.

## IV. MISSOURI & NORTHERN ARKANSAS RAILROAD COMPANY, INC.

### A. FELA CLAIMS

MNA argues that it is entitled to summary judgment on Plaintiffs' FELA claims because Royal was not an employee of a railroad. FELA governs actions by employees for personal injuries suffered while working for a railroad. 45 U.S.C. § 51. FELA states, in relevant part:

> Every common carrier by railroad while engaging in commerce between any of the

[3] It is not the district court's responsibility to sift through the record to see if, perhaps, there was an issue of fact. *See Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006) ("Without some guidance, we will not mine a summary judgment record searching for nuggets of factual disputes to gild a party's arguments.").

> several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . .

45 U.S.C. § 51. FELA thus applies to (1) a "common carrier by railroad" and (2) a person "employed" by that railroad carrier. The parties do not dispute that NARS, Plaintiff's employer, is not a "common carrier by railroad" and that MNA is a "common carrier by railroad." Thus, to recover under FELA, Plaintiffs must show that Royal was an employee of MNA.

To establish the existence of the employee relationship, a plaintiff must demonstrate that the railroad had "control or right to control" the actions of the employee. *Kelley v. S. Pac. Co.*, 419 U.S. 318, 325-26 (1974); *see also Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985). A plaintiff can establish employment under FELA while employed by a non-railroad by being classified in one of three ways: borrowed servant of the railroad, a dual servant, or a subservant of a company that was a servant of the railroad. *Kelley*, 419 U.S. at 324.

Royal was hired by NARS and was paid by NARS. (ECF No. 29-2). NARS is responsible for implementing a safety program and for making sure that the NARS employees comply with all laws and regulations. (ECF No. 29-1; ECF No. 29-2). NARS had the authority to discipline its employees and to dock its employees' pay. (ECF No. 29-5). Royal was trained and certified to operate a ballast regulator by NARS. When NARS performs services for a railroad, NARS makes all decisions regarding which equipment and personnel are necessary to complete the job. (ECF No. 29-2). The equipment that Royal used was owned and maintained by NARS. (ECF No. 29-2). All of Royal's personal protective equipment was also NARS equipment. The majority of the work done by both NARS and Royal is done for railroads other than MNA. (ECF No. 29-2).

Royal testified that he believed he was an employee of the railroad based on the fact that he

was on their property. (ECF No. 29-5). No one expressed to him that he was an employee of MNA. (ECF No. 29-5). Royal admits that MNA did not control and direct how he did his work. (ECF No. 29-5). In fact, he considered the chain of command to be a chain of only NARS employees. (ECF No. 29-5).

MNA had general oversight over the job NARS was performing, but the Court finds that MNA did not control or have the right to control the work of Royal on the railroad. The Agreement established an independent contractor relationship between NARS and MNA. (ECF No. 29-1). NARS was required to perform its work "to the satisfaction and acceptance" of MNA. (ECF No. 29-1, p. 2). The Agreement required NARS to maintain specific engineering specifications and workmanship practices. If asked, NARS was required to provide a status report on how much of the job had been completed. (ECF No. 29-2). An MNA "Project Engineer" could make "periodic inspections of the Work to verify quantity and quality of materials, quality of workmanship, adherence to schedules and to approve the Work." (ECF No. 29-1).

MNA employed an Employee in Charge ("EIC") who was required to be at prejob briefings. (ECF No. 29-10, p. 22). Roscoe Clay, Royal's supervisor and an employee of NARS, testified that the EIC would give the parameters of track and time, and tell them when it was clear to work. (ECF No. 29-3). The EIC had the authority to stop the job. (ECF No. 29-3). Clay would communicate with the EIC concerning where they were working, what time they needed to come back, and, if there was a specific concern, he would call the EIC and seek guidance on how to handle it. (ECF No. 29-3). The EIC would inspect the track at the end of the day and inform Clay if there was something that needed to be done differently. The EIC had the right to order NARS employees off the property if they were not performing their job safely or correctly.

Upon consideration, the Court finds that Royal was directed and controlled by NARS. There is no evidence that MNA controlled or had the right to control Royal's actions. His chain of command consisted of only NARS employees, and he was instructed and supervised by NARS employees. He was paid by NARS and could be fired by NARS. There is no evidence of interaction between Royal and MNA employees indicative of MNA employees controlling the work of Royal. *See Kelley*, 419 U.S. at 329 ("[E]vidence of contacts between [the railroad's employees and the contractor's employees] may indicate, not direction or control, but rather the passing of information and the accommodation that is obviously required in a large and necessarily coordinated operation."). All job assignments came from NARS, as it was the only entity for which there is evidence of the authority to direct and control Royal's job duties. NARS supplied all tools and safety equipment to Royal and was responsible for implementing the safety regulations. Royal applied to and was hired by NARS, trained by NARS, and performed most of his work for railroads other than MNA.

While MNA was involved in providing engineering and safety specifications and employed the EIC to supervise the track, the ability of MNA to inspect work and enforce safety regulations on their tracks does not amount to control as required to be considered an employee. *See Sullivan v. Gen. Elec. Co.*, 226 F.2d 290, 291 (6th Cir. 1955). The right to stop and inspect work for compliance is distinguishable from the right to control the manner of compliance.

The Court finds that undisputed evidence in this case demonstrates that MNA had general inspection rights over Royal's employer NARS, and required that NARS obey certain safety regulations. The direction of MNA to NARS employees was limited to this general oversight. The evidence of whether MNA controlled NARS is not in dispute, and a reasonable jury would not find that MNA either controlled or had the right to control the work of Royal on the day of the accident

such that Royal would be considered an employee of MNA. Accordingly, Defendant's Motion for Summary Judgment with respect to all of Plaintiffs' FELA claims (ECF No. 29) should be granted.

B. STATE LAW NEGLIGENCE

i. DUTY

Defendants assert that they are entitled to judgment as a matter of law because no duty of care was owed to Royal. They assert that Royal was aware of the rip rap hazard in the area he was working and was trained to operate the ballast regulator in areas of track that contained rip rap.

To establish a prima facie case of negligence, a plaintiff must show that the plaintiff sustained damages, that the defendant was negligent, and that such negligence was a proximate cause of plaintiff's damages. *Taylor v. Tex. Gas Transmission, LLC*, 2012 Ark. App. 625 (2012). "The issue of whether a duty exists is always a question of law, not to be decided by a trier of fact." *Lacy v. Flake & Kelley Mgmt., Inc.*, 235 S.W.3d 894, 898 (Ark. 2006). If no duty of care is owed, summary judgment is appropriate. *Smith v. Hansen*, 914 S.W.2d 285 (Ark. 1996).

An employer of an independent contractor "owes a common-law duty to the contractor's employees to exercise ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Jackson v. Petit Jean Elec. Co-op.*, 606 S.W.2d 66, 68 (Ark. 1980). This duty of an employer of an independent contractor does not contemplate a duty to warn of obvious hazards which are an integral part of the work he was hired to perform. *Id.*; *see also D.B. Griffin Warehouse, Inc. v. Sanders*, 76 S.W.3d 254, 262 (Ark. 2002).

Plaintiffs compare their case to slip and fall cases arising from business invitees required to cross a location prone to slippery conditions. In those cases, the proper question is whether the business owner used ordinary care to keep the premises free from risk of dangerous conditions. *See*

*Brookshires Grocery Co. v. Pierce*, 29 S.W.3d 742 (Ark. App. 2000). At least one Arkansas court has ruled that these slip and fall cases are inapplicable outside of their specific context. *See Culhane v. Oxford Ridge, LLC*, 362 S.W.3d 325, 329 (Ark. App. 2009) (affirming summary judgment for defendants because they owed no duty to warn worker, painting by a state highway, of the dangers posed by oncoming traffic, and concluding slip-and fall cases cited by the plaintiff were inapposite). The Court agrees; the question before it is whether the danger posed to Royal was an obvious danger integral to the work he was hired to perform.

In *Jackson v. Petit Jean Electric Co-op*, an employee brought suit against an electric co-op, which contracted with his employer, seeking damages for injuries. 606 S.W.2d 66, 68 (Ark. 1980). The plaintiff was injured by energized electric lines while working to rebuild new transmission and distribution lines of the electric transmission system. The Arkansas Supreme Court concluded that not only did Petit Jean Electric Co-op not have a duty to warn employees that the work would be dangerous, but also that they did not have a duty to insulate or isolate hot wires or to deenergize electrical lines, because the independent contractor's "compensation and contractual obligations expressly contemplate[d] working around energized lines." 606 S.W.2d at 68; *see also Chew v. Am. Greetings Corp.*, 754 F.3d 632 (8th Cir. 2014) (applying Arkansas law, the Eighth Circuit concluded that injury to electrical utility employee resulted from "obvious risks of electricity inherent in their profession").

In *D.B. Griffin Warehouse*, the plaintiff's husband died when he fell through a skylight while painting. 76 S.W.3d at 254. The plaintiff sued, and the jury awarded damages. The Arkansas Supreme Court reversed and dismissed the case, holding that the independent contractor's employees "were aware that the skylights posed an obvious hazard or danger that was an integral part of the

work [the independent contractor] was hired to perform. Therefore, the defendant had no duty to warn of these dangers because they were obvious and part of the work." 76 S.W.3d at 262.

Defendants assert that moving rip rap onto the rail and then hitting it with the ballast regulator is an obvious and integral danger of the work Royal was hired to do. Royal testified that he did not see the piece of rip rap until after the accident because before the accident it was covered by smaller pieces of rock. However, he had noticed that there was rip rap along the railroad in the area where he was operating the ballast regulator. He also testified that it was a common occurrence to pull rip rap from outside the rails to inside the rails, and that he had done it before the date of this incident. He had previously encountered a piece of rip rap that stopped his machine on an MNA line before he encountered this piece of rip rap.

Plaintiffs point to the fact that there is evidence of a "recurring and hidden" hazardous condition.[4] However, Plaintiffs fail to dispute Defendants' assertion that, under the laws governing a duty for an employer of an independent contractor, the employer is not responsible for obvious dangers which are "integral" to the work hired to perform.

The Court finds that this case is analogous to Arkansas cases analyzing the duty of an employer of an independent contractor. NARS, Royal's employer, was undisputedly hired by MNA to move rock constituting the railroad ballast. Royal alleges that he was injured because a large piece of rip rap caused his machine to stop suddenly. It is undisputed that Royal regularly encountered rip rap while performing his job as a ballast operator, he knew rip rap was on the track, and he knew that coming into contact with the rip rap could be dangerous because it could stop his

---

[4]The Court notes that Plaintiffs fail to specifically point the Court to any piece of evidence supporting this assertion in their Response to Defendants' Motion for Summary Judgment.

machine suddenly. The Court finds that encountering rip rap was an obvious danger for Royal in his role as a ballast operator, and it was integral to the job that he was hired to perform.

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 35) should be granted.

ii. ALTERNATIVE NEGLIGENCE THEORIES

Defendants assert that they are entitled to summary judgment on Plaintiffs' alternative negligence claims, including that MNA negligently failed to provide him with a reasonably safe place to work; that MNA has a custom, practice, policy, directive and device to discourage employees from reporting personal injury incidents; and that MNA failed to introduce and implement safe working practices along its track.

Plaintiffs' brief relating to whether MNA negligently failed to provide him with a reasonably safe place to work is directly responsive to Defendants' arguments regarding FELA. Because the Court has determined that the FELA claims are not cognizable because Plaintiff Shawn Royal was not an employee of Defendants, Defendants are entitled to summary judgment on the claim that Defendants failed to provide Royal with a reasonably safe place to work.

Plaintiffs have abandoned the claim that Defendants have a custom, policy, or practice of discouraging employees from reporting injury accidents. (ECF No. 67, p. 11). Defendants' Motion for Summary Judgment regarding this claim should be granted.

Plaintiff's assert that their claim relating to the failure to introduce and implement safe working practices should proceed because Defendants left hidden dangers in a place where Plaintiff may encounter them.[5] Plaintiffs have not contested Defendants' assertions that they have no duty

[5]Plaintiffs point generally to "the same evidence and law stated above and that has been filed in support of plaintiffs' responses to defendants motions for summary judgment regarding Federal Preclusion and General Negligence [See Doc. 51 through Doc. 56]." Plaintiffs have not pointed the Court to any evidence supporting their claim. *Satcher v. Univ.*

to create safe working practices for Royal, who is not their employee. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim relating to failure to implement safe working practices.

Accordingly, Defendant's Motion for Summary Judgment (ECF No. 38) should be granted with respect to Plaintiffs' alternative negligence theories.

V. CONCLUSION

For the reasons stated herein, Defendants' Motions for Summary Judgment (ECF Nos. 23, 29, 35, & 38) should be and hereby are **GRANTED**.[6] All of Plaintiffs' claims against all Defendants are hereby dismissed. The Court will enter a separate judgment of even date.

**IT IS SO ORDERED**, this 17th day of August, 2016.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

*of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 734-35 (8th Cir. 2009) (noting that it is not district court's responsibility to sift through record to see if, perhaps, there was issue of fact).

[6]In addition to asserting that Plaintiffs' alternative negligence theories fail, Defendants' Motion for Summary Judgment (ECF No. 38) asserts that Plaintiff is not entitled to punitive damages. Because the Court finds that Plaintiffs' underlying claims fail, it is unnecessary for the Court to consider the applicability of punitive damages.